The NATIONAL HEALTH AGENCIES'
COMMITTEE FOR THE COMBINED
FEDERAL CAMPAIGN, Plaintiff,

v.

Alan K. CAMPBELL, United Way of
America and International Service
Agencies, Defendants.

Civ. A. No. 78-2313.

United States District Court,
District of Columbia.

Jan. 22, 1982.

Paul M. Vincent, Kaler, Worsley, Daniel & Hollman, Washington, D.C., for plaintiff.

Stanley E. Alderson, Dept. of Justice, Patricia Barald, Washington, D.C., for defendants:

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

The National Health Agencies Committee for the Combined Federal Campaign (NHA), an unincorporated association of 17 non-profit, national volunteer health agencies approved to participate in the annual on the job fund raising drive among federal personnel known as the Combined Federal Campaign (CFC), filed this action for declaratory and injunctive relief "to compel conformity with ... [Executive Order 10927 (March 18, 1961)] in the distribution of receipts from ... [CFC campaigns], in order to enforce the rights of NHA's member agencies of all donors ... to make contributions". Compl. ¶ 5. Plaintiff contends that the formula for distribution contained in the Manual on Fund-Raising in the Federal Service (Manual) violates the requirements of the Executive Order for "true voluntary giving" by federal employees because those donations designated for a particular agency and undesignated donations are not fully honored, to the injury of the donor and the plaintiff.

### I

Under the formula, a dollar based figure is established for each participating agency using average receipts from the past five campaigns. All contributions designated for a specific agency are then credited against that agency's dollar base and no distribution of undesignated funds is made until all designated funds are counted and credited. Then, undesignated funds are used to fill up whichever agencies' dollar base goal of designated funds has not been reached. "Designated funds" are those designated by a donor for a specific voluntary agency. Manual § 4.7. "Undesignated funds" are those contributions not designated for any particular beneficiary organization. *Id.*

The case is now before the Court on motions for summary judgment filed by the parties.

### II

The defendants argue that because plaintiff's case is based solely on an Executive Order issued by the President pursuant to his inherent constitutional power, the

Court lacks jurisdiction under 28 U.S.C. § 1331 because an Executive Order is not a "law of the United States" within the meaning of the statute. Plaintiff has alleged violations of its constitutional rights as well, and this being the case, the Court has jurisdiction to entertain this action. *See United Black Fund, Inc. v. Hampton,* 352 F.Supp. 898, 903 (D.D.C.1972). Moreover, the claims arising under the Executive Order and those under the Constitution are interrelated and are essentially identical.

■ The defendants have also questioned the plaintiff's standing to represent First Amendment rights of donors whose intentions allegedly are not honored under the distribution scheme established by the Manual. The Court need not address that specific issue however, since plaintiff clearly has the right to represent the interests of its member organizations and thus has standing to prosecute this case. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 341–342, 97 S.Ct. 2434, 2440–2441, 53 L.Ed.2d 383 (1977).

### III

Turning to the merits of the claims asserted by the plaintiff, the plaintiff raises a number of contentions.

First, the plaintiff contends that under the formula established by the Manual, a designating donor is made to indirectly subsidize other agencies whose purposes the donor may disagree with because his donation effectively frees up an equivalent amount of undesignated funds for support of agencies which have failed to reach their dollar base. Moreover, only those designated funds which exceed an agency's dollar base result in any net gain to that agency.

Second, the plaintiff contends that the Manual formula fails to honor the intentions of those donors who have declined to designate on the grounds that the literature distributed to donors by local CFC's is misleading and fails to indicate that the agency's share of the total undesignated funds is reduced according to the designated contributions received by that agency.

Third, the plaintiff argues that the Manual formula violates the First Amendment because of its failure to comply with the Executive Order. Plaintiff notes that the act of contribution is a form of expression and association protected by the First Amendment. According to plaintiff, the use of voluntary contributions for other than the intended purpose is analogous to a compelled contribution, *see Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), and to placing a ceiling on the amount of contribution to a political campaign, *see Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

Fourth, the plaintiff contends that the Manual discriminates against the plaintiff because controlling the availability of a forum for First Amendment expression in a discriminatory manner is a denial of equal protection and First Amendment rights. Here, plaintiff asserts that the fact that plaintiff receives a higher share of designated funds in comparison with other participating agencies means that it receives a disproportionately low amount of undesignated funds because of the Manual formula.

Fifth, the plaintiff challenges the use of the prior five years as a method for determining the dollar base. Finally, the plaintiff contends that the Manual formula is arbitrary and capricious.

■ The Court concludes that the contentions of the plaintiff are without merit. Assuming for the moment that plaintiff has standing on behalf of the donors, it seems clear that those donors who designate particular agencies do so with the understanding that their donations go to that agency alone, and this is so regardless of the total amount collected from all donors. In fact, under the Manual formula, all donations made by a donor who has chosen to designate a particular agency to receive the funds are paid over to the agency regardless of whether it exceeds the dollar base provided for that agency. The Court concludes that there is a rational basis for the distribution scheme contained in and provided for by the Manual.

■ This contention also goes to plaintiff's argument that the Manual does not allow for "true voluntary giving". Here, donors are not required to give anything to the CFC. When they do give, they may choose to exercise their option to designate an agency and therefore be assured that their total gift goes to that designee, as outlined above, or not to designate an agency, and allow the defendants to distribute money according to the Manual formula. Thus, this case is clearly distinguishable from *Abood, supra,* where nonunion members were *compelled* to contribute service fees, some of which, prior to the Court's decision, may have gone to political activities or beliefs in which some contributors did not share.

■ Plaintiff's contention that the Manual formula fails to honor the intention of donors who have not designated an agency is also without merit. Indeed, it is more logical and rational to assume that a donor who does not designate an agency is exercising "no preference" in the eventual distribution, than to assume that he is exercising a preference that his contribution be distributed in the manner plaintiff seeks. Once again, the Court finds that there is a rational basis for the distribution scheme of undesignated funds. In this connection, plaintiff does make one important point, that being, that all donors should have access to information as to the scheme of distribution of the funds in the event a donor determines not to make a designation. Although the Court is satisfied that a nondesignating donee is actually stating that he has "no preference", it is certainly better to advise him exactly how the money he donates will be distributed if he does not make a designation. In any event, the Court is advised that this issue is moot since that information is now and has been available to all donors.

■ Plaintiff's claim that the Manual formula discriminates against plaintiff in violation of the First and Fifth Amendments is also without merit. This argument is apparently based on the belief that plaintiff is entitled to receive a certain per-

centage of the undesignated fund regardless of the amount of designated funds it receives. The fact that plaintiff anticipates receiving those funds does not rise to a legitimate expectation in those funds. Plaintiff has presented nothing in the record which would support its contention that there has been a constitutional violation.

■ Plaintiff is not entitled to a *de novo* review on these issues; rather, as long as there is no constitutional violation, the review is limited to whether the policies set forth in the Manual are arbitrary or capricious, or not according to law, or without a rational basis. Although it is clear that the distribution of the undesignated funds might have been handled differently, it is equally clear that the defendant's present scheme of distribution is not arbitrary or capricious and that it is supported by a rational basis. The same can be said for establishing the dollar base by reference to the prior five years.

Finally on this point, the Court notes that to follow plaintiff's plan for distribution, which *was* given consideration by the defendants, would allow the plaintiff disproportionate control over undesignated funds. It hardly seems likely that that was the intent of the Executive Order and the plaintiff has failed to demonstrate that such a result is compelled by logic, statute or the Constitution. Accordingly, the Court concludes that plaintiff's motion for summary judgment must be denied and that the motions for summary judgment filed by the defendants must be granted. The case will be dismissed with prejudice.